IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| D'ANGELO P. MADLOCK, | |
| Plaintiff, | |
| v. | Case No. 25-3028-DDC-GEB |
| BILLY CRUSE, | |
| DAVID YOUNGER, | |
| & AN UNKNOWN DEFENDANT, | |
| Defendants. | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS
BILLY CRUSE, DAVID YOUNGER & AN UNKNOWN DEFENDANT**

Plaintiff D'Angelo Madlock's claim against Defendants Billy Cruse, David Younger, and an Unknown Defendant—officers at the Larned State Correctional Facility—should be dismissed because the Complaint fails to state a constitutional violation against each of the three defendants. The Complaint fails to plead a plausible claim of an Eighth Amendment violation alleging each of the three defendants were deliberately indifferent to his safety from attack from a fellow inmate. Also, each of the three defendants are entitled to qualified immunity because the Plaintiff won't be able to meet his burden to show that the right alleged in his Complaint was clearly established at the time of the incident. Third, Plaintiff failed to exhaust his administrative remedies.

1

**Legal Standard**

The Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a complaint must contain sufficient factual matter to state a claim that is plausible—and not merely conceivable—on its face. *Iqbal*, 556 U.S. at 679-80; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept as true those allegations that state only legal conclusions. *See Iqbal*, 556 U.S. at 678. In the context of 42 U.S.C. § 1983 claims, to "nudge their claims across the line from conceivable to plausible," a complaint "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). Doing so requires the § 1983 plaintiff to "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claim against him or her, as distinguished from collective allegations against the state." *Id*. at 1250. Factual allegations that contradict documents central to the case or matters of judicial notice "are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997).

**Factual background**

On May 19, 2024, there was a physical altercation between two inmates, Plaintiff D'Angelo Madlock and Kavon Jones in the Larned State Correctional Facility. This brief

2

generally adopts the structure of the factual background taken from the Complaint in the Court's Memorandum & Order dated March 31, 2025. ECF No. 7. Plaintiff alleges that on May 19, 2024, Jones approached him in the cafeteria. ECF No. 1 at 4. At the time, Plaintiff was classified as a low/high medium security inmate and was housed in F1 cellhouse, while Jones was classified as a maximum security inmate and was housed in F4 cellhouse. *Id*. at 5, 7. Jones began a verbal altercation with Plaintiff. *Id*. at 4.

Plaintiff alleged that the cafeteria isn't large, and three corrections officers—including Defendant Billy Cruse—were within earshot of the verbal altercation. *Id*. Both Plaintiff and Jones raised their voices during the argument and at one point Jones yelled, "Keep playing with me, I'm gonna stab the shit out of you. I'm in here for murder." *Id*. Neither Cruse nor any other corrections officer intervened, attempted to separate Plaintiff and Jones, or offered protective custody to Plaintiff. *Id*. at 9.

Plaintiff and Jones left the cafeteria and walked to the rotunda. *Id*. at 4-5. Plaintiff alleges there is a security control room, called the bubble, in the middle of the rotunda, from where an officer controls the sliding doors that provide access to each of four general population cellhouses, F1, F2, F3, F4. *Id*. at 5. The officer in the control room is the unnamed Defendant, who was responsible for opening the sliding doors to allow inmates to pass in or out of their cellhouses. *Id*. at 5, 9. The Complaint alleges: "If you do not live in a certain cellhouse he or she will not let you in." *Id*. at 5.

3

The verbal dispute between Plaintiff and Jones continued into the rotunda and to within 10 feet of the front of the control room. *Id*. at 4-5, 9. Plaintiff placed his hands in his pockets. *Id*. at 5. Jones became angrier, again threatening Plaintiff and telling him to put up his hands and fight. *Id*. at 5. The Complaint alleges: "Jones charged at the plaintiff several times attempting to turn the verbal altercation into a physical one." *Id*. at 9. When the F4 sliding door opened, Jones went through, and it closed behind him. *Id*. at 5. After the F4 sliding door was secured, the officer in the control room opened the F1 sliding door, Plaintiff entered F1, and the officer closed the door behind Plaintiff. *Id*.

As Plaintiff walked toward his cell, he saw the F1 door was being opened for Jones to come in. *Id*. Defendant David Younger was the F1 cellhouse officer on duty, and he saw Jones enter F1 and didn't stop him. *Id*. Officer Younger heard an inmate say "shank." *Id*. at 5, 10. Officer Younger went to Plaintiff's cell and sprayed Plaintiff first and then sprayed Jones after he realized Plaintiff was attempting restrain Jones. *Id*. at 5. The Complaint alleges: "By spraying only the Plaintiff he gave Jones the upper hand he needed to stab the plaintiff" in the back of his right shoulder. *Id*. at 5, 10. Younger also sprayed Jones. *Id*. at 5.

As the only count in this lawsuit, the Complaint alleges Officer Cruse, the Unknown Defendant, and Officer Younger violated Plaintiff's rights under the Eighth Amendment and Fourteenth Amendment to the United States Constitution when they failed to protect him from Jones. ECF No. 1 at 6-7; ECF No. 7 at 3.

4

**Arguments & Authorities**

Plaintiff's lawsuit alleging an Eighth Amendment violation for failure to protect should be dismissed. The Complaint generally alleges that reasonable measures weren't taken to guarantee his safety. Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017). When a qualified immunity challenge is made at the motion-to-dismiss stage, there are two distinct questions: (1) whether the facts set forth a constitutional violation, and (2) whether the alleged violation of constitutional law was clearly established at the time. *Pierce v. Gilchrist*, 359 F.2d 1279, 1284 (10th Cir. 2004). A plaintiff bears the burden to show that each defendant isn't entitled to qualified immunity. *Lincoln v. Maketa*, 880 F.3d 533, 537 (10th Cir. 2018).

To demonstrate that a right is "clearly established," a plaintiff must identify "an on-point Supreme Court of published Tenth Circuit decision," or show that "the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains." *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018). Alleging only a violation of abstract rights, without more, is insufficient because "general statements of the law are inherently incapable of giving fair and clear warning" to a government actor. *White v. Pauly*, 580 U.S. 73, 79 (2017). Whether a plaintiff has alleged a violation of his clearly established constitutional rights to overcome the qualified immunity defense is an issue of law. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

**I.    The facts as alleged fail to set forth a constitutional violation against each of the three defendants for failure to protect Plaintiff from attack from another inmate.**

The Eighth Amendment to the United States Constitution prohibits the infliction of cruel and unusual punishments. Generally, prison officials have a duty under the Eighth Amendment to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Not every injury suffered by a prisoner at the hands of another translates into a constitutional violation. *Id*. at 834. Rather, a constitutional violation occurs only when the allegation is objectively "sufficiently serious" and a prison official has acted with "deliberate indifference" to inmate health or safety. *Id*. To act with deliberate indifference, an official must be subjectively aware of the risk. *Id*. at 829. That means an official's failure to alleviate a significant risk that he should have perceived but didn't perceive can't be condemned as the infliction of punishment and thus not an Eighth Amendment violation. *Id*. at 838. "Deliberate indifference describes a state of mind more blameworthy than negligence." *Id*. at 835. Prison officials who actually knew of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately wasn't averted. *Id*. at 844. Prison officials who act reasonably don't violate the Eighth Amendment. *Id*. at 845. Subjective recklessness is the appropriate test for deliberate indifference. *Id*. at 839-40.

Failure to protect a prisoner violates an inmate's constitutional rights only when two requirements are met. *Id*. at 825. First, an inmate must show that, objectively, he is incarcerated under conditions posing a substantial risk of harm. *Id*. Second, the prison

6

official must have a deliberate indifference to inmate health or safety. *Id*. In other words, to satisfy the subjective component, the prison official must know and disregard an excessive risk to inmate health or safety. *Id*. A claim alleging a prison official should have known of an excessive risk of danger is insufficient. *Id*. "To prevail on a failure to protect claim, an inmate must show (1) 'that the conditions of his incarceration present an objective substantial risk of serious harm' and (2) 'prison official had subjective knowledge of the risk of harm.' 'In other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (cleaned up). Dismissal is proper when a complaint doesn't allege and can't allege that an officer was aware of the risk of harm that ultimately happened. *Id*. at 1215.

The mere fact that an attack happened doesn't establish the required deliberate indifference to an inmate's constitutional rights. *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993). Threats between inmates are common and don't, under all circumstances, serve to impute actual knowledge of a substantial risk of harm. *Turner v. Oklahoma County Board of County Commissioners*, 804 F. App'x 921, 926 (10th Cir. 2020) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (110th Cir. 2019); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996)). Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*.

### A. Officer Billy Cruse

The Complaint alleges that Officer Billy Cruse was one of three corrections officers in the cafeteria posted within earshot of inmate Kavon Jones, who allegedly yelled "Keep playing with me. I'm gonna stab the shit out you. I'm in here for murder." ECF No. 1 at 4. The Complaint alleges Officer Cruse either "didn't notice or ignored this altercation while it was taking place." ECF No. 1 at 4. The Complaint alleges Officer Cruse "did not separate Kavon Jones and Plaintiff or offer protective custody waivers, which would give the Plaintiff the opportunity to challenge his safety and chose to go on protective custody until he felt safe or an investigation showed he had no merit to believe he was unsafe." ECF No. 1 at 9.

The Complaint fails to state a constitutional violation because it alleges only that Officer Cruse could have heard Jones' threat, not that Officer Cruse actually heard the threat accompanied by details that would have indicated a strong likelihood that Jones was going to attack Plaintiff.

A factually similar suit was dismissed in this district in a case where a Leavenworth County Jail inmate was struck by another inmate. *McAlister v. Dedeke*, No. 21-3258-SAC, 2022 WL 110818 (D. Kan. Jan. 12, 2022) (unpublished). In *McAlister*, the Court dismissed a complaint because the plaintiff failed to make a plausible allegation that any jail officer had a subjective awareness of a specific and substantial risk or harm to the plaintiff's safety. *Id.* at *2. The Court noted that there were no allegations that the

plaintiff, or anyone else, warned anyone, including the defendants, about a threat. *Id*. Even so, the Court noted that "mere negligence in failing to take reasonable care to assess and react to the possibility of violence" isn't sufficient to state a constitutional claim. *Id*.

The same is true here. The Complaint doesn't allege that Plaintiff told Officer Cruse about Jones' threat or that Plaintiff approached Officer Cruse about protective custody because he felt unsafe. At most, the Complaint hints that Officer Cruse could have heard Jones' statement and should have anticipated potential violence. That's not enough to state a constitutional violation for deliberate indifference to Plaintiff's safety. *See Farmer*, 511 U.S. at 838 ("But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). Thus, the claim against Officer Cruse should be dismissed.

### B. An Unknown Defendant

The Complaint alleges that an Unknown Defendant, a corrections officer whose name and title is unknown to Plaintiff, was stationed in a control room in front of the cell houses. ECF No. 1 at 5. The Complaint alleges that Jones became angrier, charged at Plaintiff, and made threats. ECF No. 1 at 5. The Complaint alleges the Unknown Defendant controlled the sliding doors to the cell houses, and it was his or her job to allow inmates to exit and enter the cell houses. ECF No. 1 at 5. As to the alleged interaction between Plaintiff and Jones, the Complaint alleges: "It would be very hard if not

9

impossible not to notice the altercation taking place in front of the defendant if they are doing their job." ECF No. 1 at 5.

Again, this isn't enough to state a constitutional violation for deliberate indifference to Plaintiff's safety. See *Farmer*, 511 U.S. at 838. The Complaint doesn't allege facts that show that the Unknown Defendant had actual knowledge of a specific and substantial risk or harm to Plaintiff's safety, only that he or she should have noticed an altercation. ECF No. 1 at 5. For example, the Complaint doesn't allege that the Unknown Defendant had information that would impute knowledge to him or her that Jones intended to harm Plaintiff and that Jones had a homemade stabbing device. The Complaint alleges only that the F1 sliding door was opened for Jones to come in. ECF No. 1 at 5, 9. The Complaint doesn't allege facts to show the Unknown Defendant opened the F1 sliding door for the purpose of allowing Jones to attack Plaintiff. *See, e.g., Ivory v. Werholtz*, No. 09-3224-SAC, 2009 WL 4043304, at *1, 4 (D. Kan. Nov. 19, 2009) (unpublished). At most, the Complaint hints at negligence. That's not enough to state a constitutional violation for deliberate indifference to Plaintiff's safety. *See Farmer*, 511 U.S. at 838. Thus, the claim against the Unknown Defendant should be dismissed.

### C. Officer David Younger

The Complaint alleges that Officer David Younger saw Jones enter F1 and didn't stop him, according to the statement of Officer Younger. ECF No. 1 at 5. Plaintiff further alleges: "The defendant said he saw Kavon Jones enter my cell 'cell 105' after ducking

10

something in the doorway. Defendant Younger said he heard a resident say 'shank.' He goes on to say he sprayed inmate Madlock (Plaintiff) only, then after he realized I was attempting to restrain Kavon Jones he sprayed Jones too. By spraying only the plaintiff he gave Jones the upper hand he needed to stab the plaintiff." ECF No. 1 at 5.

Notably, the Complaint doesn't allege that Officer Younger knew anything about what Jones allegedly said to Plaintiff in the dining hall or that Jones intended to harm Plaintiff when he didn't stop Jones. ECF No. 1 at 5. The Complaint alleges that Officer Younger intervened immediately after he saw an airborne object and heard someone say "shank." ECF No. 1 at 5. And the Complaint doesn't allege that Officer Younger initially sprayed Plaintiff for the purpose of giving Jones the upper hand to stab plaintiff. ECF No. 1 at 5. Rather, Officer Younger's statement shows that he sprayed Jones to stop Jones.

Officer Younger's statement, quoted in the Complaint, is reproduced here:

> On 19 May 2024 at 1709, resident Jones, Kavon 115847 of F4 cell 414 exited F4 with a case of chemicals as though he were going to fill them up. Jones then entered F1 unit where I COI Younger witnessed him enter cell 105 after ducking something in the doorway, and I heard a resident say the word, "shank". I went to cell 105 and observed Jones fighting with resident Madlock, D'Angelo 124936 who lives in cell 105. I called for an A1 response, issued loud verbal commands for the inmates to stop fighting, which they didn't comply with my directives. I pepper sprayed Madlock, who had Jones bent over in a bear hug and wasn't releasing him, with an MK4 streamer. I then realized that Madlock was attempting to restrain Jones, who was still actively trying to attack him, so I pepper sprayed Jones as well. CSI Cruse arrived, and I told him that Jones was the aggressor. CSI Cruse then sprayed the residents with an MK9 which broke up the fight. COI Panning and COI Rose restrained Jones, and he was escorted to E unit for a decontamination shower. Madlocks cell mate (Scott, Dayton 129494) said that his padlock was missing. Photographs were taken of the cell before it was searched. The cell was searched by COI Younger and COI Panning who located a padlock that was broken, noticed a fresh dent on the door frame (no rust, paint flaking off) in the shape of the broken padlock, and a homemade weapon sharpened out of broken plexi glass with a cloth handle.

(Attach additional pages as needed)

☐ Warden/DW  ☐ MH   State ID #: K0000236094   COI David Younger
☐ I&I        ☐ Food Serv  ☐ Maintenance       Signature
☐ UTM        ☐ E ☒ F1 ☐ F2 ☐ F3 ☐ F4 ☐ South Unit   COI Younger, David

11

The Court properly may consider the full text of Officer Younger's statement because the Complaint refers to this statement, and this statement is central to Plaintiff's claim against Younger. *See Matney v. Barrick Gold of North America*, 80 F.4th 1136, 1150 n.11 (10th Cir. 2023). Notably, the Complaint omits the actions taken by Officer Younger after he saw Jones enter Plaintiff's cell and heard "shank" said by a resident: "I went to cell 105 and observed Jones fighting with resident Madlock, D'Angelo 124936 who lives in cell 105. I called for an A1 response, issued loud verbal commands for the inmates to stop fighting, which they didn't comply with my directives." Narrative Report, May 19, 2024.

The Complaint also paraphrases Younger's report, which actually states: "I pepper sprayed Madlock, who had Jones bent over in a bear hug and wasn't releasing him, with an MK4 streamer. I then realized that Madlock was attempting to restrain Jones, who was still actively trying to attack him, so I pepper sprayed Jones as well." Narrative Report, May 19, 2024. "CSI Cruse then sprayed the residents with an MK9 which broke up the fight." Narrative Report, May 19, 2024. In other words, the Complaint and the referenced report show that Officer Younger timely reacted after he perceived a risk to inmate safety and took action to break up the fight. *See Farmer*, 511 U.S. at 835. He acted reasonably. There is no plausible allegation that Officer Younger disregarded any risk to Plaintiff's safety. Rather, he acted to stop Jones from attacking Plaintiff any further. There is no allegation that amounts to "indifference" let alone "deliberate indifference" to Plaintiff's safety. Thus, the claim alleging deliberate indifference to Plaintiff's should be dismissed.

## II. Officer Cruse, the Unknown Defendant, and Officer Younger each are entitled to qualified immunity because any alleged violation wasn't clearly established.

A plaintiff bears the burden to show that each defendant isn't entitled to qualified immunity. *Lincoln*, 880 F.3d at 537. That means Plaintiff must respond by showing that clearly established law put each of the three defendants on notice that their actions violate Plaintiff's constitutional rights.

Specifically, Plaintiff must respond with clearly established law that would have put Officer Cruse on notice that he violates Plaintiff's Eighth Amendment rights by failing to separate Jones from Plaintiff after Jones said "I'm going to stab the shit out of you" within earshot of Officer Cruse. As to the Unknown Defendant, the Plaintiff must respond with clearly established law that would have put him or her on notice that failure to notice a verbal altercation and opening a sliding door violates Plaintiff's rights. And Plaintiff must respond with clearly established law that would have put Officer Younger on notice that spraying Plaintiff before Jones to break up a physical altercation violates Plaintiff's rights. Because Plaintiff cannot do so, all three defendants are entitled to qualified immunity. Thus, the Complaint should be dismissed in its entirety.

## III. The Complaint should be dismissed for failure to exhaust administrative remedies by not submitting a grievance to the Secretary of Corrections.

The Prison Litigation Reform Act provides: "No action shall be brought with respect to prison conditions under Section 1983 … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The exhaustion requirement isn't left to the district court's discretion but rather is mandatory as long as the remedies are available to the prisoner. *Ross v. Blake*, 578 U.S. 632, 639 (2016). The Kansas Department of Corrections has a four-part grievance process that applies to Section 1983 claims, contained in Chapter 44, Article 15 of the Kansas Administrative Regulations. K.A.R. 44-15-101(a) to (c). This process calls for the prisoner to take four steps: (1) seek informal resolution with prison personnel, (2) submit a grievance with the appropriate until team members, (3) submit the grievance to the warden, and (4) submit the grievance with the Secretary of Corrections. K.A.R. 44-15-101(a) to (c).

A prisoner fails to exhaust his administrative remedies by not completing the fourth step, submitting the grievance to the Secretary of Corrections as required by K.A.R. 44-15-101(d)(3). *Brownlee v. Corby*, No. 20-3122-JAR, 2025 WL 1342776 (D. Kan. May 8, 2025) (unpublished) (granting summary judgment for failure to exhaust administrative remedies for not submitting a grievance to the Secretary of Corrections); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim[.]").

Here, the Complaint fails to allege that Plaintiff submitted a grievance to the Secretary of Corrections. ECF No. 1 at 12. Thus, the Complaint should be dismissed.

Respectfully Submitted,

**FOULSTON SIEFKIN LLP**

By: /s/ *Eric Turner*
    Eric Turner, KS #25065
    7500 College Boulevard, Suite 1400
    Overland Park, Kansas 66210
    (913) 498-2100
    (913) 498-2101 Fax
    eturner@foulston.com

**ATTORNEY FOR DEFENDANTS BILLY CRUSE, UNKNOWN DEFENDANT, AND DAVID YOUNGER**

**CERTIFICATE OF SERVICE**

I certify that on June 30, 2025, I electronically filed the above and foregoing with the Clerk of the Court by using the Court's e-filing system, which will send notice to all counsel of record. A true and correct file-stamped copy promptly will be served via U.S. mail to:

    D'Angelo Paul Madlock, #0124936
    Larned State Correctional Facility
    1318 KS Hwy 264
    Larned, KS 67550

    /s/ *Eric Turner*
    Eric Turner, KS #25065